NORWICH PHARMACAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 64542, 67492. Promulgated April 5, 1934.

*H. A. Mihills, C.P.A.*, for the petitioner.
*B. M. Coon, Esq.*, for the respondent.

328

OPINION.

TRAMMELL: In its returns petitioner deducted from gross income on account of exhaustion of its trade-marks, and now contends it is entitled to deduct each year, an aliquot part of the total cost of the trade-marks. Respondent disallowed the deductions claimed, and asserts that trade-marks are not subject to exhaustion.

The statute (section 23 (k), Revenue Act of 1928) provides that in computing net income there shall be allowed as deductions, among other things, "A reasonable allowance for the exhaustion, wear and

tear of property used in the trade or business, including a reasonable allowance for obsolescence."

It is not questioned here that trade-marks constitute property, nor that the petitioner used its trade-marks in its business. It is elemental to say that, under the quoted statute, deductions are allowable only in respect of property used in the trade or business which is being exhausted by the passage of time or worn out and consumed by use. Obviously, of course, trade-marks, like other intangibles, are not subject to physical wear and tear. The issue, then, which is purely one of law, is resolved into the question, whether trade-marks may be the subject of exhaustion allowances.

Rights in trade-marks are of common law origin, *General Baking Co.* v. *Gorman*, 3 Fed. (2d) 891; certiorari denied, 268 U.S. 705. The right to a trade-mark exists at common law, *L. H. Harris Drug Co.* v. *Stucky*, 46 Fed. 624, and has long been protected thereby, *Piggly Wiggly Corp.* v. *Saunders*, 1 Fed. (2d) 572; affd., 30 Fed. (2d) 385. A trade-mark does not derive its existence from any statute, state or Federal, but exists independent of statutes, and is protected even in the absence thereof. Trade-marks are not created by the trade-mark statutes. Such statutes merely fortify the common law right to a trade-mark by conferring the statutory title on the owner. Authorities cited, *supra*, and *La Croix* v. *May*, 15 Fed. 236.

The value of a registered trade-mark does not cease upon expiration of the registration period. Registration under the Federal law protects only in interstate commerce, and the rights of the owner of such a trade-mark will be protected by the courts even after expiration of the registration. *General Baking Co.* v. *Gorman, supra.* Hence, prior to the complete abandonment of a trade-mark the period of its useful life can not be forecast or determined. There is no determinable period over which cost may be spread. Certainly it is not the period of registration, for the trade-mark is still valuable and enjoys protection of the law after expiration of that period. On this ground alone it would be necessary to disallow petitioner's claims.

However, another and equally difficult obstacle to petitioner's contention is the fact that the value of a trade-mark, registered or otherwise, is not exhausted by use nor the passage of time. So long as it is used in connection with a going business, it may safely be said that, barring obsolescence which results in disuse or abandonment, the value normally increases. And it may be noted on this point that no claim is made here on account of abandonment or obsolescence.

The principle stated is well illustrated by the facts of the instant case. The Amolin Co. acquired the trade-marks in question from the Lodi Co. and its books disclosed a total cost of the trade-marks in the amount of $138,000. Thereafter, the Amolin Co. sold the trade-marks to the petitioner for more than $677,000, notwithstanding the intervening use and lapse of time.

There are no facts disclosed by the record before us to justify the conclusion that the value of the petitioner's trade-marks is being lessened either by use or the passage of time. The inherent quality of trade-marks is such that they are not subject to exhaustion.

A trade-mark is essentially an inseparable part of, or the outward symbol of, good will. In *Beech-Nut Packing Co.* v. *P. Lorillard Co.*, 273 U.S. 629, it was pointed out that:

A trade-mark is not only a symbol of an existing good will, although it commonly is thought of only as that. Primarily it is a distinguishable token devised or picked out with the intent to appropriate it to a particular class of goods and with the hope that it will come to symbolize good will.

So far as concerns exhaustion, or the allowance of deductions therefor, trade-marks must be considered in the same classification as good will; in fact, good will embraces trade-marks.

In *Renziehausen* v. *Lucas*, 280 U.S. 387, following its prior decision in *Clark* v. *Haberle Crystal Springs Brewing Co.*, 280 U.S. 384, the Supreme Court held that the taxpayer was not entitled to deduct for exhaustion or obsolescence of good will, and specifically treated good will " as embracing trade-marks, trade brands and trade names."

In the *Renziehausen* case the Circuit Court of Appeals in its opinion (31 Fed. (2d) 675; affd., *supra*) said:

Trade-marks, trade brands and trade names are closely related to good will and no attempt has been made to segregate or differentiate them. The Circuit Court of Appeals for the Eighth Circuit * * * in the case of *Red Wing Malting Co.* v. *Willcuts*, 15 F. (2d) 626 * * * held that a deduction for obsolescence of the good will of a brewing company was not allowable * * * because the allowance for obsolescence is limited to such property as is susceptible to exhaustion, wear and tear by use in the business, and good will is not such property.

Good will is not susceptible of being disposed of independently, that is, separate and apart from the business to which it attaches. *Metropolitan Bank* v. *St. Louis Dispatch Co.*, 149 U.S. 436, 446. " Good will is the favor which the management of a business wins from the public." It has no existence separate and apart from an established business, and it can not be the subject of a loss except on the termination of the business and the sale of the assets. *National Chemical Mfg. Co.* v. *United States*, 67 Ct. Cls. 607.

The petitioner is not here claiming a loss of the value of good will represented by its trade-marks on account of obsolescence or abandonment of the trade-marks upon the termination of the business to which they appertain.

In *Manhattan Brewing Co.*, 6 B.T.A. 952, 960, we said on this subject:

The intangible property which the petitioner asserts is subject to obsolescence consists of good will, trade names, and trade-marks. Such assets have value, but that value is so interwoven with the operation of the business, so much an inseparable part of the going concern to which they appertain, that the ascertainment of such value is difficult and their sale, except as component parts of a going business concern, is all but impossible. They are not subject to physical wear and tear incident to their use in the business operations of their owner; nor ordinarily is the period of their useful life limited either by contract or statute. No one would argue that such intangibles are subject to annual losses due either to wear and tear or exhaustion even if their cost or capital value could be ascertained.

Respondent's action in disallowing deductions for exhaustion of trade-marks is approved.

*Judgment will be entered for the respondent.*