## COMMISSIONER OF INTERNAL REVENUE v. NEYLAN.

### No. 8606.

Circuit Court of Appeals, Ninth Circuit.

June 13, 1938.

James W. Morris, Asst. Atty. Gen., and Sewell Key, Joseph M. Jones, and Berryman Green, Sp. Assts. to Atty. Gen., for petitioner.

J. Paul Miller, of San Francisco, Cal., for respondent.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

DENMAN, Circuit Judge.

This is a petition by the Commissioner of Internal Revenue to review a decision of the Board of Tax Appeals which overruled the Commissioner's determination of a deficiency in taxpayer's income tax return for the year 1931.

In 1929 the taxpayer acquired corporate stock for which he paid $49,156.59. In 1931, more than two years later, he sold it for $3,174.30, and the day following the sale purchased shares of identical number and kind for $3,570.50. The stock acquired in this second purchase was sold the same day for the sum of $3,160. Thus, disregarding the wash sale, the actual loss suffered by the taxpayer from the original purchase to the final sale was $46,392.79.

This amount was claimed as a deductible loss for the year 1931 under § 23(e) of the Revenue Act of 1928, 26 U.S.C.A. § 23 note, which allowed deductions for losses "if incurred in any transaction entered into for profit * * *".

It is conceded that no loss could be claimed on the first or wash sale of the stock purchased in 1929, by reason of § 118 of the 1928 Act, 26 U.S.C.A. § 118 note.[1]

Both the Commissioner and the taxpayer agree that the loss incurred by the second sale, i. e., of the repurchased securities, is deductible. Taxpayer claims it to be an ordinary loss deductible in full

---

[1] "Sec. 118. *Loss on Sale of Stock or Securities.*

"In the case of any loss claimed to have been sustained in any sale or other disposition of shares of stock or securities where it appears that within thirty days before or after the date of such sale or other disposition the taxpayer has acquired (otherwise than by bequest or inheritance) or has entered into a contract or option to acquire substantially identical property, and the property so acquired is held by the taxpayer for any period after such sale or other disposition, no deduction for the loss shall be allowed under section 23(e) (2) of this title".

under § 23(e) (2), supra. The Commissioner asserts it to be a capital net loss under § 101 of the Act, hence deductible under § 23(e) (2) only to the extent of 12½ percent of the loss actually suffered.[2]

According to § 101 the question whether the final sale was a sale of capital assets is determined by the length of time the assets were held by the taxpayer prior to the sale. If the time was two years or more, the loss sustained is a capital net loss, deductible only to the extent of 12½ percent.

The taxpayer correctly asserts that because of the wash sale and repurchase, occurring earlier in the same day of the sale for which loss is claimed, he had not held the property for more than two years prior to such sale.

Conceding this ·position to be technically correct in the absence of statutory provisions, the Commissioner contends that the wash sale and repurchase must be disregarded in determining the length of time the stock was held, and that the time must be computed from the original purchase in 1929 to the final sale in December, 1931. The Commissioner bases his argument on § 113 of the 1928 Act:

"Sec. 113. *Basis for Determining Gain or Loss.*

"(a) *Property acquired after February 28, 1913.* The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\* \* \* \* \* \* \*

"(11) *Wash sales of stock.* If substantially identical property was acquired after December 31, 1920, in place of stock or securities which were sold or disposed of and in respect of which loss was not allowed as a deduction under section 118 of this Act, \* \* \* the basis in the case of the property so acquired shall be the basis in the case of the stock or securities so sold or disposed of \* \* \*". 26 U.S.C.A. § 113 note.

The Commissioner argues that the word "basis" in the above provision means that, for all purposes, identical stock purchased after a wash sale shall be considered the same as the stock previously owned, including the computation of the length of time the stock has been held; in other words, that in determining whether stock has been held for more than two years, the

---

[2] "Sec. 101. *Capital Net Gains and Losses.*

"(a) *Tax in Case of Capital Net Gain.* In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain.

"(b) *Tax in Case of Capital Net Loss.* In the case of any taxpayer, other than a corporation, who for any taxable year sustains a capital net loss (as hereinafter defined in this section), there shall be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: a partial tax shall first ·be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted, and the total tax shall be this amount minus 12½ per centum of the capital net loss; but in no case shall the tax of a taxpayer who has sus-

tained a capital net loss be less than the tax computed without regard to the provisions of this section.

"(c) *Definitions.* For the purposes of this title—

\* \* \* \* \* \* \*

"(2) 'Capital loss' means deductible loss resulting from the sale or exchange of capital assets.

"(3) 'Capital deductions' means such deductions as are allowed by section 23 for the purpose of computing net income, and are properly allocable to or chargeable against capital assets sold or exchanged during the taxable year.

"(4) 'Ordinary deductions' means the deductions allowed by section 23 other than capital losses and capital deductions.

\* \* \* \* \* \* \*

"(8) 'Capital assets' means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. \* \* \*" 26 U.S. C.A. § 101 note.

use of the word "basis" requires the addition of the time of holding stock repurchased after a wash sale has taken place to the time the original stock was held prior to the wash sale.[3]

The Commissioner bases his argument on the case of Helvering v. New York Trust Co., 292 U.S. 455, 461, 463, 54 S.Ct. 806, 807, 808, 78 L.Ed. 1361. In that case there was presented the question whether under a, provision of the Revenue Act of 1921, similar to section 101 of the 1928 Act, taxing as a capital gain income from the disposition of property held for more than two years, property acquired by a donee less than two years before he disposed of it, but disposed of more than two years after his donor acquired it, was a capital asset. Section 202(a) (2) of the 1921 Act, 42 Stat. 229, provided that the basis for ascertaining loss or gain from the sale of property should be the cost of such property except that in the case of assets "acquired by gift after December 31, 1920, the basis shall be the same as that which it would have in the hands of the donor".

The Supreme Court held that in determining the period of time of holding of the property before the donee disposed of it, the period of his holding should be added to that of the donor; and the time thus arrived at, being in excess of two years, the donee was required to pay only the capital net gain income rate rather than the ordinary rate.

The ratio decidendi of the court was, chiefly, that the capital gains provision was passed to encourage the disposition of capital assets, and that this purpose would be thwarted and a donee severely penalized if he were required to pay the ordinary rate on assets sold less than two years since he acquired them from his donor, but more than two years since his donor acquired them.

We do not consider the case of Helvering v. New York Trust Co. controlling here. We think rather that the instant case falls within the principle laid down in the later decision of McFeely v. Commissioner, 296 U.S. 102, 110, 111, 56 S.Ct. 54, 57, 58, 80 L.Ed. 83, 101 A.L.R. 304, which severely limited the Helvering Case to the particular situation with which it dealt.

The McFeely Case was concerned with the identical statute governing in the case before us. The taxpayer there had acquired property by bequest from a decedent. He sold the property more than two years after the decedent's death and claimed the resulting profit was taxable as a capital net gain under section 101 of the 1928 Act, supra. The court agreed that the property had in actuality been acquired at decedent's death, but was faced with the contention that the time should be reckoned from the date of distribution of the estate under section 113(a) (5) of the statute, 26 U.S.C.A. § 113 note:

"* * * if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer."

The court held that the word "basis" in section 113(a), 26 U.S.C.A. § 113 note (the identical section here material) had reference only to the value of the property and not to the computation of the length of time it had been held.

"* * * The argument for the Commissioner is that the alteration of the basis date necessarily implies an intent to make a similar alteration in the origin date of the holding period. We think the argument cannot prevail., * * * The fact that the two sections deal with the same general subject—capital gains—is cited in support of the Commissioner's position that they ought to be consistently applied. There is, however, nothing novel in the naming of arbitrary 'basis' dates differing from the admitted dates of acquisition.

"* * * Under these circumstances we ought not to depart from the plain meaning of the section in an effort to bring about a uniformity which it is claimed Congress intended but failed to express." McFeely v. Commissioner, 296 U.S. 102, 110, 111, 56 S.Ct. 54, 57, 80 L.Ed. 83, 101 A.L.R. 304.

Without considering whether the New York Trust Co. Case was overruled by McFeely v. Commissioner, we hold that the instant case is within the principles quoted from the McFeely decision, and that the considerations of policy leading to the decision in the New York Trust Co. Case are not present here.

---

[3] The interpretation contended for by the Commissioner was expressly enacted by the Revenue Act of 1932, c. 209, sec. 101(c) (8) (D), 47 Stat. 169, 26 U.S.C.A. § 101 note.

We are aware that in both these decisions the capital net gain tax was in issue, rather than the deduction for capital net loss, and that both decisions alluded to the principle that tax statutes of doubtful inent should be construed favorably to the taxpayer, a principle that might not apply where a simple question of construing a doubtful deduction provision is in issue. Helvering v. Insurance Co., 294 U.S. 686, 689, 55 S.Ct. 572, 574, 79 L.Ed. 1227. However, the capital gains provision and the capital loss provision are subsections of the same provision, § 101 of the Revenue Act of 1928, 26 U.S.C.A. § 101 note. The tests of determining the length of time property has been held are identical whether the sale of such property results in a loss or a gain, and it would be a manifest absurdity to interpret the word "basis" in section 113(a) in one fashion when dealing with gains under section 101(a) and in another fashion when dealing with losses under section 101(b).

Furthermore, it is clear that in the above quotation from McFeely v. Commissioner the Supreme Court holds that the "plain meaning" of the word "basis" is no more than cost or value. Where the statutory provisions are plain and unambiguous, there is no occasion to consider such rules of construction.

We find ourselves in accord with the Board of Tax Appeals and with the Circuit Court of Appeals for the Third Circuit in Heinz v. Commissioner, 94 F.2d 832, 833.

Affirmed.